UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RITA DEMPSEY** } } **Plaintiff,** } } v. } } **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** } } **Defendant.** } | Case No.: 5:16-cv-01701-RDP |

**MEMORANDUM DECISION**

Plaintiff Rita Dempsey ("Plaintiff" or "Dempsey") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for a period of disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I. Proceedings Below**

Plaintiff filed her application for DIB on or about May 15, 2013,[1] in which she alleged a disability onset date of April 14, 2011. (Tr. 93, 104, 173-79). She later amended her alleged onset date to June 14, 2012. (Tr. 10, 204). The initial application was denied by the Social Security Administration ("SSA") on August 19, 2013. (Tr. 110). Plaintiff requested a hearing before an Administrative Law Judge on August 28, 2013. (Tr. 115). The hearing was set for February 3, 2015 with Administrative Law Judge Cynthia G. Weaver ("the ALJ"). (Tr. 125). In

---

[1] There are discrepancies in the record regarding this date. On some documents the date is listed May 15, 2013, on others it is listed May 16, 2013. (Tr. 16, 93, 104, 127, 173). The discrepancy does not materially affect the issues in this case.

her decision dated April 23, 2015, the ALJ determined that Plaintiff had not been under a disability within the meaning of Sections 216(i) and 223(d) of the Social Security Act from the date of onset through December 31, 2012.[2] (Tr. 16). The Appeals Council denied Plaintiff's request for review on August 19, 2016. (Tr. 1-4). This denial was the final decision of the Commissioner, and therefore a proper subject for this court's appellate review.

## II. Facts

Plaintiff was fifty-five years old on her amended alleged onset date.[3] (Tr. 173). She alleges that she has been disabled since that time due to emphysema/chronic obstructive pulmonary disease ("COPD"), arthritis, neuropathy, anxiety, depression, asthma, high blood pressure, diabetes, bone spurs, and a failed hip replacement. (Tr. 93-94, 209). Plaintiff has a high school education and last worked in December 2007 as an assembly line worker. (Tr. 210-11). Her hand was injured on the assembly line in December 2007, and she has not worked since that time. (Tr. 14, 27-28, 192, 194). She received a Worker's Compensation settlement related to the hand injury in the amount of $3800. (Tr. 28).

By way of background, Plaintiff had a total left hip arthroplasty performed by Dr. Horn in October 2010 for osteoarthritis. (Tr. 14, 283-84). X-rays of the hip taken in December 2010 showed "good fit and fill" and an overall "excellent" appearance. (Tr. 533). In June 2011 Plaintiff presented to The Orthopaedic Center complaining of some pain in her left hip and leg

---

[2] As the ALJ explained at the hearing, "[w]hen you work and you pay the FICA tax that you hear so much about, part of that goes into a separate fund that's called the disability trust fund. … And the last time that you had coverage for the disability insurance in order to receive Social Security disability benefits was December 31st, 2012. … And just as for your eligibility for disability insurance – disability benefits – it doesn't matter if you became disabled after that. You must show that you were disabled on or before December 31st, 2012 in order to receive any benefits." (Tr. 25-26). *See also Douglas v. Commissioner*, 486 Fed. Appx. 72, 75 (11th Cir. 2012) (holding that a claimant who becomes disabled after she loses insured status must be denied DIB despite her disability).

[3] As noted by the ALJ, Plaintiff had a prior application for DIB which was denied initially on August 15, 2011 and by the Appeals Council on March 18, 2013. (Tr. 10). Since Plaintiff's alleged onset date is June 14, 2012, the doctrine of res judicata is not applicable. (*Id.*). "Any discussion of the medical evidence prior to that time is for historical purposes only and is not to be construed as a reopening of that decision." (*Id.*).

2

"for three days." (Tr. 526). On examination, Dr. Burnside noted that "she walks with a limp" and "she complains of a lot of pain in the left hip and leg. She says it goes down to her knee on occasion but does not necessarily go below her knees. Both of her knees are bothering her." (Tr. 527). Plaintiff was prescribed Medrol and Ultram and was told to return to Dr. Horn on an as needed basis. (*Id.*).

Plaintiff returned to see Dr. Horn in July 2011 complaining of pain in the left hip over the trochanteric area. (Tr. 513). On physical examination Dr. Horn noted her gait had a "troubled appearance and chronic limp. She struggles to get up and down out of the chair." (*Id.*). Dr. Horn injected the hip with Depo-Medrol. (*Id.*). Plaintiff was instructed to return to Dr. Horn on an as needed basis. (Tr. 514). She returned in October 2011 complaining of pain in the left knee "which has stiffness and soreness and activity intolerant and ongoing inability to walk and stand significantly." (Tr. 510). Plaintiff received an injection in her left knee and left hip. (*Id.*).

In March 2012 Plaintiff returned to Dr. Horn "saying that she is having tenderness in her hip." (Tr. 508). Dr. Horn noted "[l]ast time I saw her in the fall she had a hip injection which was successful. She had total hip arthroplasty with good success." (*Id.*). On physical examination Dr. Horn noted "no limp." (*Id.*). There was "moderate tenderness" in the left hip. Dr. Horn diagnosed Plaintiff with "improved" tendonitis of the left hip, osteoarthritis of the left knee, and status post total hip arthroplasty left doing satisfactorily." (Tr. 508-09).

The available medical evidence during the relevant period from June 14, 2012 through December 31, 2012 is scarce. (Tr. 12, 26; Pl. Br. at 3). On September 18, 2012, Plaintiff presented to Dr. Horn at The Orthopaedic Center with "quite a bit of pain in her hip, in her back, and down her leg. She says the pain can go as far as the foot and has been tingling in her foot in the past." (Tr. 505). On physical examination Dr. Horn noted "discomfort on extremes of

3

motion," "motion of the left hip is painful," and "tenderness over the greater trochanter." (*Id.*). In addition, both knees were noted to be "generally tender." (*Id.*). Plaintiff was diagnosed with left leg pain secondary to lumbar radiculopathy, osteoarthritis of the knees bilateral, status post total hip arthroplasty left, and trochanteric tendonitis left hip unresponsive to injection. (*Id.*). An injection was given in the knee, and an MRI scan of the lumbar spine and a bone scan of the pelvis and demurs was recommended. (Tr. 506). After those tests, Plaintiff was informed that "the knee is not the origin of this pain." (Tr. 614). X-rays of the lumbar spine showed "good straight alignment, good interspace, good disc spaces, left hip shows no problems with the stem, good fit and fill." (Tr. 507). X-rays of the pelvis showed "satisfactory left total hip arthroplasty;" X-rays of the lumbar spine showed "good straight alignment," "good disc spaces," and "good preservation view L5 disc space." (Tr. 528-29).

On September 27, 2012, Plaintiff returned to the Huntsville Clinic with a painful hip. (Tr. 504, 612). Dr. Horn went over the results of the MRI with Plaintiff, and explained that neither her back nor her hip was the source of her pain. (*Id.*). Dr. Horn's notes state that Plaintiff "is not happy at all but I do not have any other suggestions with medicine adjustments and I sure do not want to change things given to her by her physician. … I hope that she can work with her medical doctor about the level of medications she has asked me about …" (Tr. 44, 504, 612). Plaintiff was advised to see Dr. Horn on an "as needed" basis. (*Id.*). Plaintiff did not receive any other medical treatment during the relevant time. (Tr. 14, 26).

As to the effects of her medical conditions during the relevant period of June 14, 2012 through December 31, 2012, Plaintiff testified that she would occasionally need help tying her shoes, sometimes need help stepping in and out of the bathtub, and had difficulty standing at the stove and cooking due to the pain in her leg, heel, and lower back. (Tr. 40). She would try to

load and unload the dishwasher, and could usually do the top rack but not the bottom rack because "being bent over like that, it would cause muscle spasms. I had muscle spasms bad in my back." (Tr. 41). She was told by her doctor after her hip replacement surgery to never sweep, mop, or vacuum.[4] (Tr. 39-40).

During the day, Plaintiff would have to alternate walking and sitting, and several times a day would have to lie on her back on the couch or in the bed, depending on how much she had tried to do before. (Tr. 41). "Doing too much" included loading and/or unloading the entire dishwasher, standing and cooking supper, and/or loading the washer into the dryer and then folding it up. (Tr. 42). Plaintiff testified that she would go to church before her hip surgery, but two years after the hip surgery she was unable to sit through an entire service and would have to get up and leave. (Tr. 42-43). She testified that her pain prevented her from sitting through a two-hour movie or the evening news. (Tr. 40-43).

To help alleviate these symptoms, Plaintiff was taking Lortab and muscle relaxers; however, the pain was not completely relieved. (Tr. 43). The medications made her drowsy and nauseous: "more times than not back then I would have to take my pain medicines and just go to bed and prop pillows or – get in a comfortable position to go to sleep." (Tr. 44).

## III.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant

---

[4] There is not a medical record before the court that confirms this claim.

5

engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity

during the period from her alleged onset date of June 14, 2012, through her date last insured of December 31, 2012. (Tr. 12). The ALJ also determined that the claimant had the following medically determinable impairments: degenerative joint disease of the left hip, status post total left hip arthroplasty in October 2010, degenerative disc disease, diabetes mellitus, chronic obstructive pulmonary disease (COPD), and hypertension. (Tr. 13). Although Plaintiff testified that she had been prescribed medication for depression and anxiety during the relevant time, there was no record evidence of such; therefore, the ALJ found that Plaintiff's mental impairments did not have more than a minimal impact on her ability to complete basic mental work activities. (Tr. 13).

At the next step of the analysis, the ALJ determined that none of the listed impairments, or combination thereof, significantly limited Plaintiff's ability to perform basic work related activities for twelve consecutive months. (*Id.*). In evaluating Plaintiff's pain, the ALJ applied the Eleventh Circuit pain standard. Along with evidence of the underlying medical condition, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 14). However, the ALJ found that the subjective testimony describing the intensity, persistence, and limiting effects of the symptoms was not entirely credible. (*Id.*). This lack of credibility of the subjective statements, in tandem with the contrary and inconsistent medical evidence, led to the ALJ's determination that Plaintiff did not have a severe impairment or combination of impairments. (Tr. 16).

Because the ALJ made the determination that the symptoms were not severe, she did not continue past step three of the analysis. (*Id.*).

IV. **Plaintiff's Argument for Remand or Reversal**

Plaintiff argues that the ALJ failed to properly evaluate the credibility of Plaintiff's complaints of pain consistent with the Eleventh Circuit pain standard. (Pl. Br. at 4-10). To the contrary, and for the reasons explained herein, the court finds that substantial evidence supports the ALJ's findings related to the pain standard.

V. **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

Plaintiff argues that the ALJ did not assess Plaintiff's credibility consistent with the regulations. (Pl. Br. at 5). Specifically, Plaintiff contends that "[t]he ALJ's negative credibility findings to support her determination that Plaintiff has no severe impairments is irrational and not supported by substantial evidence." (*Id.*).

When, as here, a plaintiff alleges disability through subjective complaints of pain and other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Green v. Commissioner*, 2017 WL 3187048, No. 16-16272 at *4 (11th Cir. July 27, 2017); 20 C.F.R. § 404.1529. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies that she has experienced disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony. *Crow v. Colvin*, 36 F.Supp.3d 1255, 1259 (N.D. Ala. July 28, 2014). That is, "after considering a plaintiff's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). During the assessment, the ALJ is to consider the plaintiff's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). If the ALJ rejects a claimant's testimony regarding pain, the ALJ must articulate specific reasons for doing so. *Wilson*, 284 F.3d at 1225. The ALJ's decision must provide a reviewing court a basis

to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In her application of the pain standard, the ALJ found that Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms.[5] (Tr. 14). However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (*Id.*). Specifically, the ALJ considered Plaintiff's failure to receive regular and ongoing medical treatment during the relevant period, medical evidence supporting a general improvement of the left hip osteoarthritis, an absence of objective medical evidence supporting a claim for severe osteoarthritis in the knees, and an absence of objective medical evidence supporting Plaintiff's complaints of back pain. (Tr. 14-16). Substantial evidence supports all these considerations, therefore the ALJ was not clearly wrong to discredit Plaintiff's pain testimony. *See Werner v. Commissioner*, 421 Fed. Appx. 935, 939 (11th Cir. 2011).

Despite being encouraged to visit the doctor on an "as needed" basis and being told of the need to explore "other possible tests down the road such as hip aspiration and injections and what an intraarticular steroid would be and check if any fluid could be obtained for diagnostic purposes" (Tr. 612), Plaintiff visited the doctor only twice during the relevant period. (Tr. 504-07, 528-29, 612-14). There is no evidence -- much less substantial evidence -- that Plaintiff was referred to physical therapy, pain management treatment, or any other type of treatment. *Quick v. Comm'r of Soc. Sec.*, 403 Fed. Appx. 381, 384 (11th Cir. 2010) (finding that ALJ correctly questioned credibility where medical evidence indicated a notable lack of complaint during the

---

[5] That is, the ALJ did not find that the objective medical evidence alone confirmed the severity of the pain arising out of the diagnosed medical conditions. Plaintiff does not argue that this finding was error. (Pl. Br. at 4-11).

relevant period). In fact, nothing in the relevant medical records indicate any restrictions whatsoever resultant from Plaintiff's condition. *See Vance v. Colvin*, 2016 WL 3519392, No. 2:15-cv-1483-RDP at *5 (N.D. Ala. June 28, 2016) (noting that a lack of restrictions from a physician, other than for claimant to watch his diet, constituted substantial evidence that claimant was not completely disabled); *Nappier v. Berryhill*, 2017 WL 2351590, No. 2:16-cv-1208-MHH at *6 (N.D. Ala. May 31, 2017) (noting that the treating physician recommended only conservative treatments and never restricted claimant's activity). Because of this lack of follow up and restriction, the ALJ could properly reject Plaintiff's complaints of pain as not creditable.

Further, substantial medical evidence indicates that immediately before the relevant period, in March 2012, the total hip arthroplasty was a success, a previous hip injection for pain was successful, and the hip looked "good." (Tr. 508-09). In fact, although medical evidence demonstrates that Plaintiff's gait was affected by a chronic limp due to pain in July 2011, in March 2012 Dr. Horn noted that Plaintiff was walking with "no limp." (Tr. 508, 531). Where symptoms complained of during the relevant period are contradicted by prior improvements in Plaintiff's condition, the ALJ may properly discredit Plaintiff's testimony. *See Quick*, 403 Fed. Appx. at 384 (finding that the ALJ properly discredited claimant's testimony where claimant had made improvements in his condition prior to the relevant period).

Finally, the ALJ noted the lack of objective medical evidence related to complaints of knee and back pain, and considered Plaintiff's testimony that narcotic medication helped with the pain but made her sleepy and nauseous, that she could perform simple household chores, and that she would alternate sitting and walking throughout the day. (Tr. 14, 38-44). Dr. Horn specifically noted that Plaintiff's pain was not due to her knees. (Tr. 505-06). Despite several tests to reveal any source of Plaintiff's reported pain, Dr. Horn noted Plaintiff's lumbar spine

was normal, showing good straight alignment, good interspace, good disc space, and good preservation. (Tr. 14, 507). Plaintiff's back was ruled out as the source of any pain. (Tr. 504). This lack of medical evidence calls into question Plaintiff's credibility. *See Jerrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (holding that statements concerning the intensity, duration and limiting effects of Plaintiff's symptoms were not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from that condition) (citing *Holt*, 921 F.2d at 1223); *see also* 20 C.F.R. § 404.1529(c)(3) (noting that the ALJ looks at several factors, including the claimant's daily activities when evaluating the claimant's subjective symptoms).

The ALJ had substantial evidence upon which to discredit Plaintiff's subjective complaints of pain. Although Plaintiff had impairments during the relevant time, substantial evidence indicates that those impairments, or combination thereof, were not severe such that they significantly limited her ability to perform basic work-related activities for twelve consecutive months. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed.

**DONE** and **ORDERED** this August 31, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE